+                            UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

United States of America,

          Plaintiff,

                                        Criminal No. 25-cr-20165

vs.

                                        Hon. Nancy G. Edmunds

Matthew Weiss

          Defendant.

_____/

**Opposition to Defendant's Motion to Suppress (ECF No. 25)**

Defendant Matthew Weiss seeks suppression of evidence linked to two state warrants obtained by the University of Michigan Police Department from a state magistrate authorizing the search of seventeen electronic devices. But an independent federal warrant obtained by the FBI was supported by an affidavit that did not incorporate any evidence obtained from the state device warrants. Weiss's motion should therefore be denied.

I.      **Summary**

Fourteen of the seventeen devices were seized pursuant to two UMPD-obtained premises search warrants that Weiss does not challenge. Three were turned over to UMPD by University of Michigan Information Technology Services after UM ITS began an investigation into violations of university policy. Five of the

1

devices are owned by the University of Michigan—Weiss does not even have standing to challenge any search of these devices.

The Federal Bureau of Investigation, conducting its own independent investigation, obtained its own warrant to search fourteen of the seventeen devices. The affidavit supporting the FBI warrant was based on evidence that preexisted the challenged device warrants, and it contained no information gained from the UMPD device warrants. No remedy is available for the alleged constitutional violation by UMPD because the FBI search was not a derivative search; it was conducted pursuant to an independently obtained warrant authorizing the search of devices that were lawfully in UMPD possession.

Even if the Court were to consider the FBI search derivative, invalidate the UMPD device warrants, and ultimately find that good faith reliance under *Leon* does not apply to UMPD device warrants, Weiss still cannot prevail. The remedy available to him under those circumstances would be excision from the FBI affidavit of any information obtained by the UMPD from its device warrants, followed up by revaluation of the FBI affidavit for probable cause. But no evidence obtained from the UMPD search of the devices under the device warrants was included in the FBI affidavit. Weiss's motion therefore fails, under any chain of analysis.

## II.    History of the Relevant Warrants

The warrants challenged by Weiss were obtained on January 11, 2023, to search seventeen devices legally possessed by UMPD.[1] These warrants, and their accompanying affidavits and returns, are attached as Exhibits 2 and 3.

UMPD obtained warrants on January 10, 2023, to search Weiss's home and Schembechler Hall at the University of Michigan. These warrants, and their accompanying affidavits and returns, are attached as Exhibits 4 and 5. Weiss has challenged neither of them. Fourteen of the devices were seized pursuant to these warrants. The other three were turned over to UMPD on January 6, 2023, by UM ITS; UM ITS removed them from Schembechler Hall as part of an investigation into violations of the University of Michigan's IT policy. *See* Exhibit 6.

The FBI initiated its investigation of Matthew Weiss on March 3, 2023, after meeting with UMPD on February 27. Although UMPD shared the results of its investigation with the FBI, the FBI investigation proceeded independently.

On March 27, 2023, the FBI obtained a warrant to search fourteen of the devices covered by the UMPD device warrants. That warrant, and its accompanying affidavit, are attached as Exhibit 7. No evidence obtained during searches conducted pursuant to the UMPD device warrants (or the UMPD iCloud warrant challenged by

---

[1] A chart summarizing relevant information about these seventeen devices is attached as Exhibit 1.

the defendant in his separate motion on December 15, 2025, ECF No. 29) was included in the FBI affidavit. The probable cause was instead based on evidence that predated the UMPD device warrants—information from UM ITS and University of Michigan surveillance footage. At the point the FBI obtained its warrant, it had not even reviewed the UMPD's forensic report on the devices, although it was aware of some of the UMPD's preliminary findings.

Contrary to Weiss's claims, the FBI warrant was not a "late-stage effort." (ECF No 25, PageID.108.) It was an initial step in a lengthy investigation that, independent of UMPD, resulted in the indictment of Matthew Weiss on March 20, 2025, and remains ongoing.

### III.   Weiss does not have standing to challenge any search of the University of Michigan owned devices because he did not have a reasonable expectation of privacy in the university-owned equipment

Weiss does not have sufficient privacy or property interests in the five devices owned by the University of Michigan to challenge a search or seizure of those devices. This is an independent ground for denying his motion to suppress with respect to these devices. *See United States v. Pollard*, 215 F.3d 643, 646–47 (6th Cir. 2000) (citing *Minnesota v. Carter,* 525 U.S. 83, 119 (1998)).

To claim a Fourth Amendment violation based on allegedly unconstitutional search, a defendant must establish "a legitimate expectation of privacy" in the place searched or the item seized. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978);

*United States v. Noble*, 762 F.3d 509, 526 (6th Cir. 2014). A claimed privacy

interest is assessed at the time of the alleged intrusion. *See Rawlings v. Kentucky*,

448 U.S. 98, 106 (1980). Weiss cannot satisfy the test to show a legitimate

expectation of privacy in the university owned devices, which requires that: "1) he

must manifest an actual, subjective expectation of privacy; and 2) that expectation

is one that society is prepared to recognize as legitimate." *Pollard*, 215 F.3d at 647.

With respect to the first part of the test, Weiss has not articulated how he "has

shown that 'he sought to preserve something as private'" in a way that would

demonstrate a subjective expectation of privacy in the university-owned devices.

*Bond v. United States*, 529 U.S. 334, 338 (2000) (internal alterations omitted)

(quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979)). This shortcoming is

especially apparent with respect to his choice to use two computers located in shared

office space controlled by the university to engage in conduct at issue in this case.[2]

As to the second part of the test, even if Weiss established a subjective expectation

of privacy in any of the university-owned devices at the time that UMPD device

warrants were obtained, it would not be one that society is prepared to recognize as

reasonable based on the university's ownership and applicable policies.

---

[2] Only one of the three computers was located Weiss's office; one was in the
Quarterback Meeting Room, and one was in the Tight End Meeting Room.

The university provided Weiss with the five devices, each of which was subject to the university's policies on computer use. *See* Exhibit 8. Although employees in public and private workplaces "may have a reasonable expectation of privacy against intrusions by police . . . [p]ublic employees' expectations of privacy . . . may be reduced by virtue of actual office practices and procedures, or by legitimate regulation." *O'Connor v. Ortega,* 480 U.S. 709, 716-17 (1987) (plurality). Upon logging into to any of the three UM-owned HP desktop computers that were removed from Schembechler Hall by UM ITS as part of their investigation into violations of university policy, Weiss would have been confronted with a banner requiring him to agree that he abide by "all relevant state and federal laws" and a link to a policy titled "Responsible Use of Information Resources" requiring that he "Respect the Rights and Privacy of Other Users" and "[n]ot falsely assume another person's or entity's identity or role through deception or without proper authorization."[3] Exhibit 8. The University of Michigan's policy on "Privacy and the Need to Monitor and Access Records" states that "the University and its employees" can access and monitor university records and systems "When there is reasonable cause to believe that the employee has engaged in misconduct and may have used University resources improperly." *Id.*

---

[3] Although the banner warning was limited to logging into the three desktop computers, it put Weiss was on notice of the university's policy with respect to other UM devices that were in his possession.

Weiss's lack of ownership or exclusive control[4] and notice of the policy regarding computer use prevent him from establishing a reasonable expectation of privacy in any of the five university devices. Weiss cannot establish that it would be objectively reasonable for an employee to maintain an expectation of privacy in the university-owned devices under these circumstances. This is especially so when he was using the devices to engage in misconduct that the policy expressly prohibited— misconduct that led directly to UM ITS retrieving the desktop computers from Schembechler Hall prior to the UMPD search warrant. *See*, *e.g.*, *United States v. Angevine*, 281 F.3d 1130, 1133-35 (10th Cir. 2002) (holding that university professor did not have reasonable expectation of privacy in university computer equipment used to commit illegal acts, based in part on a splash screen warning and a computer-use policy that "reserved the right to randomly audit Internet use and to monitor specific individuals suspected of misusing University computers.").

With respect to the desktop computers retrieved by UM ITS prior to the UMPD searches, even if Weiss would have had a privacy interest, it would have been extinguished when UM ITS exercised its rightful authority and took physical

---

[4] That Weiss did not own or exclusively control the devices is relevant. As the Supreme Court has explained, although "'[e]xpectations of privacy protected by the Fourth Amendment * * * need not be based on a common-law interest in real or personal property, or on the invasion of such an interest,'" "'property concepts'" are nonetheless "instructive in 'determining the presence or absence of the privacy interests protected by that amendment.'" *Byrd v. United States*, 584 U.S. 395, 403 (2018) (*quoting Rakas v. Illinois*, 439 U.S. 128, 144 n.12 (1978)).

possession of them. This severed Weiss's access and eliminated any possessory and privacy interests that he previously may have had. *See, e.g., Angevine*, 281 F.3d at 1134 (noting that additional factors in assessing whether an employee has a reasonable expectation of privacy in property located in a workplace include "(1) the employee's relationship to the item seized; (2) whether the item was in the immediate control of the employee when it was seized; and (3) whether the employee took actions to maintain his privacy in the item.") (citation and internal quotations omitted). UM ITS's retrieval of the computers falls within authority allowing public employers to conduct warrantless searches and seizures of property in which an employee has a cognizable privacy interest to investigate "work-related misconduct" if they have a reasonable basis to believe that a search will disclose evidence of the misconduct and if the search's scope reasonably relates to the investigation's purposes. *O'Connor*, 480 U.S. at 725–26 (plurality opinion); *see also City of Ontario v. Quon*, 560 U.S. 746, 761 (2010).

**IV.    No suppression remedy is available because the FBI warrant was not derivative of—and the FBI affidavit included no evidence obtained from—the UMPD device warrants**

This case presents a very narrow set of facts. The FBI took possession of electronic devices that were in the lawful possession of UMPD. The FBI then analyzed a subset of these devices as part of an independent investigation—via a federal warrant obtained with an affidavit that did not include any information that

UMPD obtained through their review of electronic devices under the challenged device warrants. Any trial evidence obtained from these devices would be introduced through the FBI's independent forensic analysis.

Because the FBI warrant has no dependence on the UMPD device warrants, Weiss's suppression motion fails for two independent reasons, neither of which requires the Court to assess the constitutionality of the UMPD device warrants.[5]

## A. The FBI searches were not derivative of the challenged warrants

Weiss does not challenge the FBI federal warrant directly. He does not claim that this warrant's affidavit lacks probable cause. He does not claim that this warrant was overbroad or lacked particularity. And he does not—and cannot—claim that the federal warrant included any information obtained by UMPD during its search of devices pursuant to the warrants that Weiss challenges. Nor does Weiss challenge the UMPD premises warrants, challenge the seizure of devices under those warrants, or allege that UMPD did not lawfully have possession of the university-owned devices that it provided to the FBI.

In this circumstance, Weiss must establish that the FBI's search warrant was derived from the allegedly unconstitutional search of the devices by the UMPD. *See,*

---

[5] The doctrine governing this inquiry has been referred to by various terms, including independent source, inevitable discovery, and attenuation. Because courts have sometimes used these terms interchangeably and inconsistently, the government's brief will avoid cabining the analysis under a specific category when possible, and focus instead on relevant holdings, reasoning, and factual parallels.

*e.g.*, *United States v. Gordon*, 346 F. Supp. 3d 999, 1006 (E.D. Mich. 2018) ("if later obtained evidence does not grow from the bough of the poisoned tree, it cannot fairly be considered its fruit.") Because he cannot do so, even if the UMPD device warrants violated the Fourth Amendment, suppression of evidence that the FBI obtained as a result of the federal warrant is not an available remedy.

Establishing whether a warranted search that complies with constitutional requirements is derivative of an earlier constitutional violation is a threshold question, because only "evidence obtained subsequent to ***and as a consequence of*** an illegal search" is subject to possible exclusion as fruit of the poisonous tree. *United States v. McClain*, 444 F.3d 556, 564 (6th Cir. 2005); *see also id*. at 560 (evidence obtained during warranted search was subject to possible exclusion where "warrant affidavit explicitly relied in part on evidence obtained during the initial warrantless search."). This determination precedes the question of whether one or more of the exceptions to the exclusionary rule for derivative evidence should apply. *See id*. at 564, 565-66 (finding that the exceptions of independent source, attenuation, and inevitable discovery were inapplicable but declining to suppress under *Leon* good faith doctrine). And, in *United States v. Crews*, the Supreme Court noted that while "***most cases*** begin with the premise that the challenged evidence is in some sense the product of illegal governmental activity," the court of appeals erred in applying "that premise to the facts of this case" in its primary determination

that a witness's in-court identification was the tainted "product of any police misconduct." 445 U.S. 464, 471-473 (1980) (emphasis added). Where a warrant affidavit contains information obtained during an unconstitutional search, this step might not require detailed discussion. But here, this initial step is dispositive.

All of the devices in question were lawfully in the possession of UMPD, and five of them were university property. Weiss does not challenge UMPD's seizure or possession of the devices. The FBI had no open investigation of Weiss at the time of the challenged UMPD device warrants and was not in any way involved with those warrants. And, critically, the FBI obtained its own federal warrant without utilizing any information that UMPD obtained from their search of the devices. The federal warrant was based on evidence that existed before UMPD sought the device warrants that Weiss claims are unconstitutional, and the FBI had not even reviewed the UMPD's forensic report on the devices' examination at the time it obtained the warrant. Even if the searches conducted under the UMPD device warrants violated Weiss's Fourth Amendment rights and are deemed a "poisonous tree," the FBI's warrant was not derivative fruit of the UMPD's device warrants and Weiss's motion fails. *See United States v. Clariot*, 655 F.3d 550, 555 (6th Cir. 2011) ("The only reason to suppress the evidence on this record is the theory, now discredited, that all Fourth Amendment violations must be punished by prohibiting the introduction of any evidence discovered after a violation, no matter how attenuated the connection

to the underlying violation."); *United States v. Smith*, 386 F.3d 753, 763 (6th Cir. 2004) (explaining that courts must examine whether law enforcement gained challenged evidence through an initial illegality or "by sufficiently distinguishable methods.").[6]

**B. Even if the FBI's warrant was derivative, the only possible remedy is not suppression but to excise any reference to the state warrants and reassess the probable cause determination.**

Even if the Court were to determine that the FBI's warrant was derived from the UMPD device warrants, Weiss's challenge still fails.

The analysis for situations when a warrant derives, at least in part, from unconstitutionally obtained evidence is consistent and well established: unconstitutionally obtained evidence must be excised from the warrant's affidavit and the warrant must be examined anew for probable cause. *United States v. Karo*, 468 U.S. 705, 719 (1984) ("However, if sufficient untainted evidence was presented in the warrant affidavit to establish probable cause, the warrant was nevertheless valid."); *United States v. Santiago*, 134 F.4th 1235, 1240-41 (10th Cir. 2025); *United States v. Mora*, 989 F.3d 794, 799 (10th Cir. 2021) ("So, if a search warrant affidavit contains information obtained through a prior unlawful search, we must must excise

---

[6] Although some courts use language concerning the three exceptions to the fruit-of-the-poisonous-tree doctrine in discussing the antecedent question of whether a search is sufficiently linked to an earlier violation to be considered its fruit, cases including *Crews* demonstrate that this is a distinct question.

that information and consider the adequacy of the affidavit anew"); *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) (explaining that precedent supports "an interpretation of the independent source rule that incorporates consideration of the sufficiency of the untainted affidavit to see if probable cause exists without the tainted information"); *United States v. Campbell*, 878 F.2d 170, 172 (6th Cir. 1989).

Should the Court reach this stage in the analysis, the conclusion is an easy one. The FBI warrant stands because it incorporated ***no evidence whatsoever*** from the challenged UMPD device warrants. Thus, even under the best-case scenario for Weiss, the potential remedy available to him would not lead to suppression.

The flagship case cited by Weiss, *United States v. Santiago*, dooms his motion. Weiss cites *Santiago* for the proposition that the fruits of a federal warrant obtained for an electronic device following on the heels of an invalid state warrant obtained for that same device can be suppressed. (ECF No 25, PageID.118-19.) But Weiss omits any discussion of ***why*** the *Santiago* court suppressed evidence obtained by the federal warrant. After ruling that the state warrant at issue was invalid, the Tenth Circuit examined the federal affidavit—and only invalidated it because (a) it included references to evidence obtained by the invalid state warrant and that (b) with those references excised from the affidavit the remainder of the affidavit did not establish probable cause. *Santiago*, 134 F.4th at 1241.

**C. There is no need to inquire whether the FBI would have sought a search warrant for the devices without knowing the results of the UMPD search**

Weiss, without citation or supporting argument, asserts that "[u]pon information and belief, the federal warrants were prompted by [the UMPD device warrants]. The independent source exception cannot apply, such that the fruits of the [UMPD device warrants] include the fruits of the federal warrant." (ECF No. 25, PageID.121-122.). Weiss ignores the full holding of *Santiago* and fails to explain or develop any argument as to why it doesn't require the denial of his motion.

Weiss appears to be seeking an inquiry into whether the FBI would have sought a warrant to examine his devices without knowledge of what the UMPD found on those devices. But such an inquiry is inappropriate; courts have only made such inquiries in limited circumstances that are inapposite.

Courts have asked whether law enforcement would have sought a warrant absent knowledge of an unconstitutional search's evidence when a warrantless search is linked to a warrant obtained by that same agency as part of a single, continuing operation—with either the explicit or implicit inference being that the warrantless search may have been purposefully seeking evidence to support the latter search warrant. *See, e.g.*, *Murray v. United States*, 487 U.S. 533, 542 (1988) (plurality opinion) (requiring an inquiry into whether "the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here"); *Silverthorne Lumber Co. Inc. v. United States*, 251 U.S. 385, 391

(1920) (information in illegally seized documents improperly used to obtain an indictment); *United States v. Williams*, 656 F. App'x. 751, 755 (6th Cir. 2016) (officers illegally searched a residence "in order to gather probable cause for the subsequent warrant").

In *Santiago*—which, just like this case, also involved a federal warrant following up on a state warrant for a common electronic device—the Tenth Circuit's assessment of the proper remedy after finding that the state warrant was unconstitutional and that the federal warrant "contain[ed] information obtained through a prior unlawful search" was to excise any tainted information from the federal warrant and re-assess probable cause. 135 F.4th at 1240. And the Sixth Circuit, in *Jenkins*, focused on the requirement that "for evidence to be inadmissible due to the government's failure to collect it via an independent source, the tainted information presented to the judge must affect the judge's decision in a substantive, meaningful way." *Jenkins*, 396 F.3d at 758.

The facts here, in which (a) the FBI obtained a federal warrant based on evidence that existed before the UMPD applied for the challenged device search warrants and (b) did not include any allegedly tainted information in the federal affidavit, do not fit the fact pattern of any case that the government can identify in which a court has asked whether a second search was motivated by a prior unconstitutional search to a degree that would preclude the application of the

15

independent source doctrine. This case is governed by the Supreme Court's analysis in *Segura v. United States*,468 U.S. 796 (1984). *Segura* involved an illegal warrantless entry into an apartment. Despite the illegal entry, the Supreme Court held that "evidence discovered during the subsequent search of the apartment the following day pursuant to the valid search warrant issued wholly on information known to the officers before the entry into the apartment need not have been suppressed as 'fruit' of the illegal entry because the warrant and the information on which it was based were unrelated to the entry." *Id*. at 799. As the Court explained:

> None of the information on which the warrant was secured was derived from or related in any way to the initial entry into petitioner's apartment; the information came from sources wholly unconnected with the entry and was known to the agents well before the initial entry. No information obtained during the initial entry or occupation of the apartment was needed or used by the agents to secure the warrant. It is therefore beyond dispute that the information possessed by the agents before they entered the apartment constituted an independent source for the discovery and seizure of the evidence now challenged.

*Id*. at 814. Those observations equally apply here.

Whether *Segura* is viewed as an independent source doctrine case—or a case involving the threshold question of whether evidence was derivative of an alleged unconstitutional action—the lesson applied to this case is the same: there can be no suppression of evidence obtained by the FBI warrant.

### D. The FBI would have sought a warrant for Weiss's devices absent knowledge of the results of the UMPD's challenged searches

Even though unnecessary for this Court to decide, the government can establish that the FBI warrant would have been sought had the UMPD device warrants not been obtained, for two reasons.

First, as the probable cause for the UMPD warrants describes, See Exhibits 2-5, UM ITS had uncovered that Weiss had likely obtained information from protected computers owned by the University of Michigan in violation of 18 U.S.C. § 1030. This fact pattern has prompted at least one past federal investigation that led to two convictions, and it would have more likely than not prompted one here. *See United States v. Nicholas Faber*, 21-cr-21, (N.D. N.Y., August 19, 2021); *United States v. Michael P. Fish*, 20-cr-117, (N.D. N.Y., May 23, 2022). It would also be relevant to this inquiry that the FBI sought its warrant before reviewing the UMPD's final forensic report on the devices in question.

Second, the results of the UMPD warrant for Weiss's iCloud data, Exhibit 9 [7] linked Weiss to an intrusion of the Athletic Training System platform offered by Keffer Development Services (the alleged victim of Count 21 of the indictment) that had previously been the subject of a complaint filed through the FBI's Internet

---

[7] Weiss filed a motion to suppress evidence from this warrant on December 15, 2025. ECF No. 29. The government will be opposing that motion. For the reasons stated in this brief, however, there are numerous reasons to deny the instant motion without the need for the Court to first decide the later motion.

Crimes Complaint Center. *See* Exhibit 10 (filed under seal) (FBI report made upon independent FBI review of the data returned from the UMPD iCloud warrant) and Exhibit 11 (filed under seal) (IC3 complaint). This evidence linking Weiss to a computer intrusion—with an interstate nexus—previously reported to the FBI would have prompted the FBI to take over an investigation initiated by a university police department and to seek a federal warrant to examine Weiss's electronic devices.

Thus, although the inquiry is not necessary, even if UMPD had not obtained a state warrant to examine the devices, the circumstances establish that the FBI would have done so on their own.

## V.   The UMPD device warrants would be saved by the good faith exception

Even though it is unnecessary to inquire as to the UMPD device warrant's validity, were the court to find them invalid the UMPD could have relied on them under the *Leon* good faith exception.

A constitutional defect does not automatically result in application of the exclusionary rule.  Here, the exclusionary rule would not apply because the UMPD acted in good faith reliance on the warrants. The Supreme Court has emphasized that the "sole purpose" of the exclusionary rule "is to deter future Fourth Amendment violations." *Davis v. United States*, 564 U.S. 229, 236–37 (2011). Suppressing evidence is a "last resort," *Hudson v. Michigan*, 547 U.S. 586, 591 (2006), justified only where "the deterrence benefits of suppression … outweigh its heavy costs,"

*Davis*, 564 U.S. at 237. Suppression is only called for "[w]hen the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights," and not when they "act with an objectively reasonable good faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence." *Id*., 238; *see also United States v. Sanders*, 106 F.4th 455, 467–68 (6th Cir. 2024) (en banc). Because of the Fourth Amendment's "strong preference for warrants," the classic example of good faith is when police act "in objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 914, 922 (1984).

While Weiss attacks the state warrants, he ignores their affidavits, which are detailed, particularized, and set out ample probable cause to search the devices for evidence of computer intrusions. And the forensic examination conducted of the devices—although thorough—was not a free-ranging inquiry but particularized and targeted towards gathering evidence of the criminal activity described in the affidavits. *See* Exhibit 12 (filed under seal).[8]

The devices here were already legally possessed by UMPD, the affidavits were targeted and particularized, and the resulting state forensic examinations were equally targeted. *See, e.g.*, *United States v. Rosa*, 626 F.3d 56, 64 (2nd Cir. 2010)

---

[8] As mentioned above, the FBI had not reviewed this report at the time it sought its warrant. It is relevant here for the limited purpose of demonstrating that the UMPD acted in good faith.

(manner of execution of search relevant to an inquiry of good faith); *United States v. Sandalo*, No. 21-708-cr, 2023 WL 3885805, at *1 (2d Cir. 2003) (same). They were also reviewed by a state prosecutor, whose approval is noted on the affidavits. Review by prosecutor is additional factor supporting good faith. *See, e.g.*, *Massachusetts v. Sheppard*, 468 U.S. 981, 985, 989 (1984); *Leon*, 468 U.S. at 902–04 & n.4 (1984). Even though it is unnecessary for the Court to find good-faith reliance by the UMPD to deny Weiss's motion, the good faith exception applies.

## VI.   Even if the UMPD device warrants were invalidated and were not saved by the good-faith exception, the FBI is entitled to rely on the federal search warrant in good faith

For the same and additional reasons that UMPD was entitled to rely in good faith on their device warrants, the good-faith exception should apply to the federal warrant. *United States v. Gordon*, 346 F. Supp. 3d 999, 1017 (E.D. Mich. 2018) (alternative holding that federal authorities could rely on the good faith exception when federal agents obtained a search warrant based on evidence sourced from an earlier illegal state search). The Sixth Circuit has recognized that law enforcement may be able to establish good-faith reliance on an otherwise-lawful search warrant that includes evidence obtained during an earlier unconstitutional search. *United States v. McClain*, 444 F.3d 556, 565–66 (6th Cir. 2005) ("Because the officers who sought and executed the search warrants acted with good faith, and because the facts surrounding the initial warrantless search were close enough to the line of validity

to make the executing officers' belief in the validity of the search warrants objectively reasonable, we conclude that despite the initial Fourth Amendment violation, the *Leon* exception bars application of the exclusionary rule in this case."). This good-faith exception is a separate basis for declining to apply the exclusionary rule to the fruit of an earlier constitutional violation; it may apply even where other exceptions such as independent source do not apply. *See id.* at 565 (finding that exceptions for attenuation, independent source, and inevitable discovery did not apply to warrant relying on tainted information before concluding that *Leon* good-faith exception precluded suppression).

The federal warrant was signed by a federal magistrate and met all the requirements of the Fourth Amendment's warrant clause; good faith relance is not negated by any of Leon's four scenarios warranting exclusion. *See Leon*, 468 U.S. at 923. Moreover, the federal warrant did not include any information from the allegedly unconstitutional search. Instead, it relied on evidence that existed before the alleged violation and informed the magistrate of the circumstances under which the devices were seized. Under the reasoning of *McClain*, *Leon*, and other cases, an objectively reasonable officer would be able to rely on the federal warrant.

Courts have repeatedly emphasized that suppression is an extreme, disfavored remedy that involves significant societal costs. *See, e.g.*, *United States v. Leon*, 468 U.S. 897, at 907 (1984) ("unbending application of the exclusionary sanction . . .

would impede unacceptably the truth-finding functions of judge and jury") (citation omitted); *Nix v. Williams*, 467 U.S. 431, 442 (1984) (describing the exclusionary rule as "admittedly drastic and socially costly"); *United States v. Richards*, 659 F.3d 527. 542 (6th Cir. 2011). Suppression is not a personal right afforded to a defendant, but a judicially fashioned remedy meant to deter police misconduct. *See, e.g.*, *Leon*, 468 U.S. at 906; *United States v. Russian*, 848 F.3d 1239, 1247 (10th Cir. 2017).

Deterrence is crucial to the analysis; the exclusionary rule is not applied unless the exclusion of evidence would result in "appreciable deterrence." *Leon* 468 U.S. at 909 (citation omitted). Suppression of evidence obtained by FBI in an independent investigation, through a warranted search of devices that were lawfully in UMPD's possession prior to the UMPD device warrants, would have no deterrent impact on the alleged constitutional violation of insufficient particularity. The UMPD device warrants were obtained before the FBI initiated its investigation of Weiss, and the UMPD has played no role in the FBI investigation. Where, as here, the "interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained," suppression is inappropriate. *Hudson*, 547 U.S. at 593. Removing evidence from the fact finder at a federal trial would serve no purpose to deter future misconduct by a university police department that long since ceased investigating Weiss.

Another touchstone of exclusionary rule jurisprudence is the mandate that application of the rule should not leave the government in a worse position than before the unconstitutional conduct occurred. *See, e.g.*, *Murray*, 487 U.S. at 541; *Jenkins*, 396 F.3d at 758. Here, suppression would leave the government in a worse position. Excluding the results of a forensic analysis of the FBI's independent warrant means that evidence from the devices in question would be forever beyond reach of federal investigators from the moment UMPD obtained the device warrants, regardless of the potential existence of independent probable cause for the FBI's search. That result is inconsistent with the principle that the exclusionary rule should only place the government in the *status quo ante* prior to the constitutional violation. *See*, *e.g.*, *id. See also Silverthorne Lumber Co. Inc.*, 251 U.S. at 392 (emphasizing that facts obtained initially through unconstitutional searches do not forever become "sacred and inaccessible.").

## VII.  Conclusion

For the reasons stated herein, defendant's motion should be denied.

Respectfully submitted,

JEROME F. GORGON JR.
United States Attorney

*/s/ Timothy J. Wyse*
Timothy J. Wyse
Assistant U.S. Attorney
211 West Fort, Suite 2001
December 19, 2025                    Detroit, Michigan 48226

## **Certificate of Service**

I certify that on December 19, 2025, I electronically filed this motion response for the United States with the Clerk of the United States District Court for the Eastern District of Michigan using the ECF system, which will send to counsel of record.


s/Timothy J. Wyse
Assistant United States Attorney